UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JESSICA ARTHUR, an individual,<br><br>               Plaintiff,<br><br>   v.<br><br>LOWE'S HOME CENTERS LLC, a North Carolina Limited Liability Corporation,<br><br>               Defendant. | Case No. 1:14-CV-00194-EJL-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in the above entitled matter is Defendant Lowe's Home Centers LLC (Lowe's) Motion for Summary Judgment (Dkt. 25). Plaintiff Jessica Arthur (Arthur) filed her response to the motion and Lowe's filed its reply. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

**MEMORANDUM DECISION AND ORDER- 1**

**Factual Background**

In 2000, Lowe's hired Arthur as a cashier for its Boise store. Arthur worked as a cashier until her termination on February 10, 2012. After being terminated, Arthur filed a discrimination claim with Equal Employment Opportunity Commission (EEOC) and the Idaho Human Rights Commission (IHRC) on March 21, 2012. The IHRC investigated and determined no probable cause existed and dismissed her complaint. On April 18, 2014, Plaintiff filed her Complaint in state court alleging violations of the Americans with Disabilities Act (ADA) and the Idaho Human Rights Act (IHRA). Specifically, Arthur claims she was terminated based on her disability and Lowe's failed to promote her based on her disability. Lowe's timely removed the lawsuit to Federal Court on May 19, 2014, and filed an answer denying the alleged violations.

In 2006,[1] Arthur was diagnosed with multiple sclerosis (MS). At the time of her termination of employment with Lowe's, she was taking MS-related medication that affected her cognitive abilities. Arthur claims when she made her diagnosis known to the Store Manager Randy Zeller in 2006, said accommodations could be made.[2] Arthur does not specify the nature of the accommodations Store Manager Zellner alluded to, nor does she allege Lowe's provided reasonable accommodations and then stopped providing accommodation. Lowe's has no personnel records indicating Arthur specifically requested accommodations for her MS or that accommodations were granted other than to

---

[1]See, Plaintiff's Statement of Undisputed Facts, dkt. 34-1, p. 6.

[2]*Id.*

**MEMORANDUM DECISION AND ORDER- 2**

allow Plaintiff off for necessary medical treatment like all other employees. Arthur had requested reasonable accommodations when she was pregnant in 2007 and she does not dispute that her requested accommodations were granted regarding her pregnancy.

In 2009, Arthur was given an "initial notice" regarding a return credit she processed incorrectly and that cost Lowe's approximately $800. In May 2010, Arthur was given an "initial notice" for taking a longer than approved break. In January 2011, Arthur was given a "written notice" for failing to follow Lowe's check acceptance and collection policies and procedures at least six times in one month, having cash shortages that resulted in losses to Lowe's and failing to follow closing procedures. Being on "written notice" means an employee is not eligible for a promotion for six months from the date of the written notice being issued. In August 2011, Arthur was given a "final notice" for failing to follow clock-in procedures. Being on a "final notice" means any future violations may result in termination and an employee is not eligible for a promotion for 12 months following the notice being issued.

In January 2012, Arthur violated two additional Lowe's policies. First, she violated Lowe's "no gift" policy by accepting a gift of a cup of coffee from a customer after being informed by her supervisor she could not accept the gift of coffee. Second, Arthur violated the store policy for military discounts by not requiring customers to present valid military photo identification cards. Arthur does not dispute she accepted the coffee gift.

**MEMORANDUM DECISION AND ORDER- 3**

Nor does she dispute she was giving the military discount without asking for proper military identification. Arthur claims she knew which customers had a valid military ID, but she was only able to identify one person who she knew had a military ID.

While the two January 2012 incidents were under review, Arthur asked to schedule time off for a medical treatment and a day of recovery after the treatment. This request was made on February 2, 2012 and her supervisor approved the time off and asked Arthur to enter it on the KRONOS computer software system the employees used for capturing their time at work. Coverage was immediately found for the shifts Arthur would miss on February 15-16, 2012.

On February 10, 2012, Arthur met with Store Manager Sean Park. Based on her two violations while under the written notice from August 2011, Park terminated Arthur's employment. At the time of the termination, Park claims he was not aware of Arthur's request for time off that had been approved by her supervisor for later in February. Arthur believes she was terminated unlawfully based on her termination occurring shortly after she requested time off for a medical treatment.

It is undisputed that Arthur completed numerous training courses while she worked at Lowe's and received pay increases based on her longevity as a cashier. After her child was born in 2007, she indicated she worked to secure permanent positions in other departments. Sometime in 2010, Lowe's changed it application procedure for promotions and required all promotion applications to be made online. Lowe's computer records do not indicate that Arthur applied for a promotion online.

**MEMORANDUM DECISION AND ORDER- 4**

## Standard of Review

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id.* at 248.

The moving party is entitled to summary judgment if that party shows that each issue of material fact is not or cannot be disputed. To show the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the

**MEMORANDUM DECISION AND ORDER- 5**

cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

Plaintiff was originally represented by counsel, but counsel was allowed to withdraw from the case. Plaintiff is now proceeding pro se. The Court's review of the motion to for summary judgment is  undertaken with an eye on Ninth Circuit standards regarding pro se litigants.  *Tucker v. Carlson*, 925 F.2d 330 (9th Cir. 1991).  However, the

**MEMORANDUM DECISION AND ORDER- 6**

Court reminds Arthur that pro se litigants are held to same procedural rules as counseled litigants.  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

"Courts interpret the standards of disability [discrimination] under the ADA and IHRA identically. Accordingly, when the court refers to one statute, its reference impliedly includes the other." *Ward v. Sorrento Lactalis, Inc.*, 392 F. Supp. 2d 1187, 1190, n.1 (D. Idaho 2005) (internal citation omitted).  Therefore, when this Court refers to the ADA, it is also referring to the equivalent state statute, the IHRA.

## Analysis

### 1. Was Arthur terminated because of her disability in violation of the ADA or IHRA?

Arthur maintains she was terminated because of her MS and the cognitive changes due to her MS-related medication. She argues Lowe's failed to offer her reasonable accommodations, failed to request her medical records and failed to provide her with information to give her doctors regarding signs of her reduced cognitive ability and other difficulties at work. Lowe's responds that Arthur never requested accommodation and it had no duty to independently request her medical records from her doctors or to inform her doctor of her work performance.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability. . . ."  42 USC § 12112(a). "To prevail on a claim of unlawful discharge under the ADA, the plaintiff must establish he

**MEMORANDUM DECISION AND ORDER- 7**

[she] is a qualified individual with a disability and that the employer terminated him [her] because of his disability." *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005). "The ADA defines a 'qualified individual with a disability' as 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "An ADA plaintiff bears the burden of proving she is a qualified individual with a disability." *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1108 (9th cir. 2000) (internal quotation marks omitted). A "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(a).

> Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations. *Barnett v. U.S. Air*, 228 F.3d 1105, 1114 (9th Cir.2000). "An appropriate reasonable accommodation must be effective, in enabling the employee to perform the duties of the position." *Id.* at 1115. The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process. *Id.* at 1114 -15; *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir.1996) ("A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith."). Employers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible. *Barnett*, 228 F.3d at 1116.

*Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137-38 (9th Cir. 2001). The duty to accommodate is a continuing duty. *Id.* at 1138.

**MEMORANDUM DECISION AND ORDER- 8**

First, Lowe's argues that Arthur admits in her deposition that she never told Lowe's that she had any job-related restrictions related to her MS or MS-related medications. Therefore, Lowe's argues it had no reason or duty to start the interactive accommodation process with Arthur. The Court agrees the employee must seek accommodation versus "hoping" the employer will recognize his or her disability on its own and initiate the accommodation process. Employers are not typically doctors and are not in a position to question an employee's private medical history unless the employee brings such information to the employer's attention. In the present case there is no dispute that Lowe's management knew Arthur had been diagnosed with MS, but it is also undisputed Arthur never asked for accommodation. Arthur knew how to ask for an accommodation as she had done so when she was pregnant in 2007, so a lack of knowledge of how to seek an accommodation or to at least request an accommodation were known to Arthur and she failed to request accommodation by her employer.

Arthur claims Lowe's denied her the ability to effectively approach her doctor about her issues she experienced at work. There is nothing in the record to suggest Lowe's took any action to limit Arthur's access or ability to provide information to her doctor on her symptoms. There is no evidence Arthur ever asked for copies of her performance reviews or was denied copies of the same to share with her doctor. Clearly, Arthur was aware of her performance reviews as they occurred regularly during her term of employment and she signed such reviews.

**MEMORANDUM DECISION AND ORDER- 9**

The Court reaches the conclusion Arthur failed to request an accommodation even though Arthur states in her statement of facts that Randy Zeller said he would accommodate her needs in 2006. This statement by Randy Zeller is hearsay and is not admissible. Plaintiff should have filed an affidavit from Mr. Zeller if she wanted to rebut the summary judgment motion as she admitted in her deposition she did not ask for an accommodation. Arthur's allegation in her undisputed facts is without corroboration since it based on what another person said to her and is not reliable or admission in its current form. Further, Zeller was not the store manager when Arthur was put on "written notice" or "final notice" or terminated as Plaintiff admits the store manager was Park for at least the final year of her employment. Plaintiff testified she had not asked her supervisor or the store manager for reasonable accommodation.

Second, even assuming Arthur's MS rises to the level of a disability, Lowe's argues Arthur is not a qualified individual as with or without accommodation she was not able to perform the essential functions of her job as a cashier. The medical testimony is undisputed by Dr. Lindholm (Arthur's primary treating doctor) and Dr. Southwick (Defendant's neuropsychologist) and establishes that the MS and/or MS medications impacted Arthur's cognitive abilities. These conclusion are consistent with the Plaintiff's own statements and those of her husband on her application for Social Security disability.

The essential job functions of a cashier are not disputed. At the time she was fired, Arthur's cognitive abilities did not allow her to complete her essential job functions such as accurately counting change, processing returns, remembering procedures for discounts,

**MEMORANDUM DECISION AND ORDER- 10**

clocking in, responding to customer and employee questions, processing merchandise through the store computer system, and fulfilling all closing responsibilities. The doctors and Arthur concur Arthur is not capable of working as a cashier in a distracting or fast paced environment such as presented in a retail setting. Moreover, her cognitive abilities are not likely to improve but to continue to degenerate as her disease progresses. An employer is not required to change essential functions of a job to accommodate an employee's inability to do the job. See, e.g., Wardia v. Justice & Pub. Safety Cabinet Dep't of Juvenile Justice, 509 F.Appx. 527, 531 (9th Cir. 2013). Therefore, the Court agrees that Arthur was not a qualified individual as even with reasonable accommodations, she could not perform the essential functions of her job when she was terminated. Stated another way, reasonable accommodation was not possible as Arthur was unable to adequately perform the essential functions of her job while on her MS-medications.

As to Plaintiff's claim Lowe's should have moved her to another department (i.e, paint department instead of a cashier), this argument is without legal merit as an employer does not have to completely change the scope of an employee's job as an accommodation. Arthur was trained as a cashier and that is the only position she had worked in for Lowe's in the eleven years she worked for Lowe's. The ADA does not impose a duty to create a new position to accommodate a disabled person. *See Willis v. Pacific Maritime Ass'n*, 162 F.3d 561,567 (9th Cir. 1998).

**MEMORANDUM DECISION AND ORDER- 11**

Third, the Court finds Arthur's disability was not the motivating factor in the termination of her employment. *See Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005). Arthur was not terminated "because of" her disability, she was terminated because of her undisputed work violations, the last two violations having occurred while she was on "final notice." It is undisputed she had been advised in August 2011, that further violations could result in her termination.  The Court, for purposes of this motion, will consider as true Plaintiff's allegation that Park referred to Arthur's notice of a requested absence when she was terminated. The Court notes that Park denies he was aware of her request for an absence later in the month when he terminated Arthur. However, the mere reference to an upcoming absence (which Plaintiff agrees had been approved by her supervisor) does not equal Arthur was terminated "because of" her disability. Such reference would have to be the "motivating factor" for her termination. Instead, Arthur agrees that Park referred to the recent violations that were admitted by Arthur as the basis for her termination. The record is filled with violations of store policy as the basis for the termination.  No reasonable juror could find Arthur's disability being indirectly referred to by a reference to an upcoming absence, was the motivating factor for Arthur's termination.

Fourth, other than arguing that the basis for termination was pretextual, Arthur does not submit any evidence that she was treated different than similarly situated employees. In fact, it was other cashiers that reported the military discount violations as customers complained when the other cashiers enforced the policy when in the past

Arthur had given the discount without producing a military identification. Additionally, prior to Arthur accepting the coffee as a gift from a customer, she was specifically advised not to accept the coffee by her supervisor and did so anyhow. This is consistent with the violation for her incorrect clocking in procedures. Arthur was advised of the correct procedures and then intentionally ignored the instruction and clocked-in through a different department. Plaintiff simply has not presented genuine issues of material fact regarding the legitimate business reasons (in the form of multiple policy and procedure violations) for terminating Arthur's employment.

In sum, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). Plaintiff has failed to direct the Court to specific evidence that is admissible and that if viewed in a light most favorable to Arthur would present a genuine issue of material fact to allow this claim to proceed to trial. For all of these reasons, the Court finds as a matter of law that genuine issues of material fact do not exist that would prevent the Court from granting Defendant's motion for summary judgment on Plaintiff's unlawful termination claim under the ADA or IHRA.

**MEMORANDUM DECISION AND ORDER- 13**

**2. Did Lowe's fail to promote Arthur because of her disability in violation of ADA or IHRA?**

Plaintiff alleges Lowe's failed to promote her because of her disability. The record does not support this claim. By law, the Court can only consider failure to promote claims that occurred within 300 days of her filing of her administrative complaint for an ADA claim (May 26, 2011) and within one year for an IHRA claim (March 21, 2011). *See Mallard v. Battle Energy Alliance, LLC, No. 4,* 2013 WL 2458620,#3 (D. Idaho June 6, 2013), citing 42 U.S.C. § 2000e(5)(e)(1) and Idaho Code §§ 67-5907(1), 67-5908(2). Any claims *prior to* March 21, 2011, are time barred.

Here, Plaintiff admits in her deposition that the process changed for filing for promotions around 2010. From that point on employees had to file for all promotions online. There is no record of Arthur *ever* having filed online for a promotion. Additionally, she admits in her deposition she was told she was not eligible for a promotion for twelve months from the date she received her "final notice" in August of 2011 and for six months after her January 2011 "written notice." Based on these facts, it appears there would have only been a couple of months in between the "written notice" and the "final notice" that she would even have been eligible to apply and be considered for a promotion. After the "final notice" in August she was not eligible for promotion at any time prior to her termination.  Arthur's failure to apply as well as the policy consequences for work violations is the reason she was not promoted, not her disability.

**MEMORANDUM DECISION AND ORDER- 14**

While Plaintiff alleges at least one department manager told her they would consider for her a transfer or promotion, there is no record she ever applied for a transfer or a promotion to head cashier. The record is devoid of any evidence that says promotions and transfers were processed without an employee even applying. Further, failure to get a lateral transfer for the same pay cannot alone be an adverse employment action. *Bell v. Lockheed Martin Corp.*, 2014 WL 2920503, *17 (D. N. J. June 27, 2014).

Again, Plaintiff has failed to present any genuine issues of material fact that would allow this claim for discrimination based on a failure to promote because of her disability to proceed and the claim must be dismissed.

## Order

**IT IS ORDERED** that Lowe's Motion for Summary Judgment (Dkt. 25) is **GRANTED** on all of Plaintiff's claims and the case is **DISMISSED IN ITS ENTIRETY**.



DATED:  **March 29, 2016**

Honorable Edward J. Lodge
U. S. District Judge